OPINION
Defendant-appellant, Tiffnie Keller, appeals her conviction for perjury. We affirm.
On August 15, 1995, appellant testified at a child support hearing on behalf of her daughter, Sierra Keller. In response to questions concerning her employment, appellant stated that, except for a short period during March 1995, she had not been employed since January 1994. Appellant also stated that she was not employed "at this time." Based upon these statements, appellant was indicted for perjury in violation of R.C. 2921.11.
A jury trial on the perjury charge was held on May 22, 1997. At the trial, Vincent McKee testified that he hired appellant on June 13, 1995, to care for his infirm wife. McKee stated that he paid Keller $6.50 per hour and issued her a check each week for the work she performed, for a total of $754 in June 1995 and $751.75 in July 1995. Eight of McKee's cancelled checks made payable to Tiffnie Keller were entered into evidence.[1] McKee testified further that on July 28, 1995, he fired appellant and hired another caretaker. That situation did not work out, and McKee rehired appellant "a few days after" the date of August 11, 1995 at the rate of $6.75 per hour. McKee testified that from mid-August on he paid appellant in cash. When asked to explain why, McKee replied: "[H]er mother suggested it * * * she thought that she should not have a record of it." McKee stated that he withdrew $1,000 in cash from his bank account on August 17, 1995 and on September 15, 1995, and that he paid appellant approximately $750 from each of those withdrawals.
Jewell Dilley, appellant's grandmother, testified that she worked for the McKees two to three days a week during June and July 1995 and that on the other days of the week, "Tiffnie would work."
Gayle Denen, Chief Deputy Clerk for the Fayette County Probate and Juvenile Courts, testified that she recorded the hearing and prepared the transcript in which appellant stated under oath that she was not working and that she had not been employed since January 1994.
Kelly Elliot, an investigator at the Fayette County Child Support Agency, testified that based on appellant's August 15, 1995 testimony, Sierra's father was obligated to provide one hundred percent of Sierra's child support. According to Elliot, if appellant's income were annualized based on the payments made to her by McKee in June and July 1995, appellant would have been responsible for 54.87 percent of Sierra's child support.
Appellant testified that she did not mention "helping out" Vincent McKee when she was asked about her employment at the August 15, 1995 hearing because she "did not consider what [she] was doing at Mr. McKee's a job." Appellant stated that she began working for the McKees after her mother received a phone call from Mr. McKee. Appellant's mother told McKee that appellant was not working and that she might be able to help him out. Appellant then met with Mr. McKee who asked her what the going rate of pay was. Appellant testified that she began spending time at the McKees for which Mr. McKee paid her by check on approximately a weekly basis. According to appellant, Mr. McKee did not pay her hourly, instead he "paid [her] what he felt he wanted [her] to have." Appellant stated:
 I never considered Mr. McKee as a boss. Mr. McKee and I did a lot of things together. He would want me to come out to go to lunch, he would want me to come out and just sit and talk with him over lunch, I would cook his lunch and he would write me a check at the end of the week.
Despite this casual arrangement, appellant stated that she kept track of the hours she spent at the McKees. Eventually, she asked for and received a written reference from McKee in which he stated that appellant "was employed by me" beginning in June 1995.
As to the state of her employment on August 15, 1995, appellant testified that on Sunday, August 6, 1995, she told McKee that she had called off her wedding, had a bad migraine headache, and could not come to his home the next day. Appellant then arranged for her grandmother to take care of Mrs. McKee. Appellant stated that she "never went back to work" at the McKee home. Appellant denied receiving cash payments from McKee in August and September.
After hearing the evidence, the jury found appellant guilty of perjury. Appellant filed this appeal.
In a single assignment of error, appellant contends that there was insufficient evidence to support her conviction. The crux of appellant's argument is that her statement that she was not employed on August 15, 1995, was contradicted only by McKee's testimony and was not corroborated by any other direct or circumstantial evidence. Appellant relies on R.C. 2921.11(E) which states:
 No person shall be convicted of a violation of this section [perjury] where proof of falsity rests solely upon contradiction by testimony of one person other than the defendant.
McKee did not expressly testify that appellant was in his employ on August 15, 1995. Moreover, no other witness statement nor documentation appears to provide unequivocal support for this proposition. However, even in the absence of clear proof on this single point, other statements made by appellant on August 15 support her conviction for perjury.
R.C. 2921.11 prohibits any person in an official proceeding from knowingly making a material false statement under oath. A false statement is material if it "can affect the course or outcome of the proceeding." R.C. 2921.11(B). At the August 15, 1995 hearing, appellant testified that she had not been employed since 1994. McKee's testimony, the cancelled checks from June through August 1995, appellant's grandmother's testimony, and even appellant's own testimony that she was paid on a weekly basis after she performed certain chores for the McKees, provide sufficient evidence that when appellant testified at the child support hearing that she had not worked since January 1994, she made a false statement under oath at an official proceeding. Elliot's testimony that appellant's statement greatly altered her child support obligations provides sufficient evidence that appellant's statement was material.
"[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273. A conviction will not be disturbed unless the reviewing court finds that "reasonable minds could not reach the conclusion reached by the trier of facts." Id.
In light of the foregoing, we find that the evidence presented at trial was sufficient to support appellant's conviction for perjury. The assignment of error is overruled. Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] The date/amount of each check is as follows: (1) June 16, 1995/$221.00; (2) June 23, 1995/$276.25; (3) July 3, 1995/$256.75; (4) July 10, 1995/$110.50; (5) July 14, 1995/$221.00; (6) July 21, 1995/$261.00; (7) July 28, 1995/$159.25; (8) August 4, 1995/$295.75.